Randolph Gaw (S.B. #223718)
rgaw@gawpoe.com
Mark Poe (S.B. #223714)
mpoe@gawpoe.com
Flora Vigo (S.B. #239643)
fvigo@gawpoe.com
GAW | POE LLP
4 Embarcadero, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

Attorneys for Plaintiff Theodore Liaw

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THEODORE LIAW<br><br>Plaintiff,<br><br>v.<br><br>UNITED AIRLINES, INC.<br><br>Defendant. | Case No. 3:19-CV-00396<br><br>**COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Theodore Liaw ("Plaintiff") hereby makes the following allegations against defendant United Airlines, Inc. ("United"):

## SUMMARY OF ALLEGATIONS

1. This is the story of how United's negligence nearly resulted in the loss of all life aboard United Airlines Flight 931 on October 27, 2018, and how United has blatantly lied to its customers to cover up that negligence.

2. The passengers of Flight 931 were settled in to what they thought would be a routine trans-Atlantic flight. That assumption proved to be false when, from their cruising altitude of approximately 40,000 feet, the plane had to make an emergency landing. Everyone aboard felt the plane suddenly plunge and begin a terrifyingly rapid descent that only ended when the plane landed at a remote airport in Goose Bay, Canada. The injured and shocked passengers

1  were then left to stew on board the plane for 8 hours, without any relief, until a replacement
2  airplane arrived from New York to continue their journey.

3      3.      The reason for this emergency landing was because the cockpit window had
4  shattered, as seen in the pictures below taken by Plaintiff after Flight 931 had landed in Goose
5  Bay:



4.      Flight 931 was a Boeing 767-300 airplane.  The cockpit window for these aircraft
is made up of three reinforced layers of glass.  Flight 931's cockpit window turned out to be

completely compromised on the first two layers – the window was shattered with numerous holes and leaking air pressure. Courageously, Flight 931's co-pilot quickly pushed his weight against what was left of the third and last layer of the cockpit window, which may have prevented the entire window from breaking during the descent to Goose Bay. Had that last layer disappeared, both pilots would have likely been sucked out of the plane and Flight 931's passengers would have been doomed.

5. Indeed, it was entirely fortuitous that Flight 931 was not further over the Atlantic Ocean at the time of the accident. If that were the case, the airplane would have had to make an emergency landing into the ocean itself. As Flight 931's pilots explained to Plaintiff, everyone on board would have either died from the impact or would have quickly frozen to death in the cold ocean.

6. As it turned out, the cause of the shattered cockpit window was the negligence of a United airplane mechanic. That mechanic had over-torqued the bolts of the cockpit window while the plane was on the ground. That overstressed the cockpit window and caused it to eventually lose its structural integrity when Flight 931 was approximately 40,000 feet in the air.

7. Insultingly, United soon fabricated an excuse for this accident. It instructed its customer support personnel to explain to customers that a "bird hit the windshield" – an utterly preposterous story for numerous reasons, especially given that no birds live or fly at that altitude. United then added insult to injury by offering each passenger only a $500 voucher to let bygones be bygones, even though United had reported that it earned profits of more than $800 million for the most recent fiscal quarter.

8. Plaintiff has suffered bodily injury and severe emotional distress as a result of United's negligence. All he asks is that he receive fair compensation from United from his close brush with death due to United's negligence.

**PARTIES**

9. Plaintiff Theodore Liaw is an individual domiciled in San Francisco, California.

10. Defendant United Airlines, Inc. is a corporation organized under the laws of the state of Delaware that has its principal place of business in Chicago, Illinois.

**JURISDICTIONAL STATEMENT**

11. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the international Montreal Convention.

12. The Court has personal jurisdiction over United pursuant to the Montreal Convention and also because United has significant business contacts with the state of California.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391 pursuant to the Montreal Convention and also because United has significant business operations out of San Francisco, California, including the fact that San Francisco International Airport is one of United's major airport hubs.

**INTRADISTRICT ASSIGNMENT**

14. Assignment to the San Francisco division of this Court is appropriate because Mr. Liaw resides in San Francisco and because United conducts significant business operations out of San Francisco.

**FACTUAL ALLEGATIONS**

15. Plaintiff was a passenger on Flight 931. On October 27, 2018, he boarded United's airplane on a flight that would take him from Chicago to London.

16. The aircraft took off without incident, and the first few hours passed by like any other long flight. Flight 931 settled in at a cruising altitude of approximately 40,000 feet. Plaintiff was seated in the Polaris Business Class section of the flight.

17. Approximately 3 hours into the flight, the pilot got on the intercom and informed everyone that the cockpit window had shattered, and that the plane needed to make an emergency landing.

18. The next 15-30 minutes were among the most terrifying of Plaintiff's life. Flight 931 immediately plunged and continued on a rapid descent towards the ground. Utter silence filled the plane, as the various passengers gripped their arm-rests with white knuckles during this episode. Many aboard thought they were going to die.

19. Fortunately, the skilled pilots of Flight 931 were eventually able to land the aircraft at the Goose Bay Airport located in Goose Bay, a remote city in the Newfoundland

province of Canada (the most easterly part of that country). Due to that rapid descent and the resulting hard landing, Plaintiff suffered a bodily injury.

20. Specifically, Mr. Liaw injured his back during the landing, and his back remains sore and receives treatment more than two months later.

21. Plaintiff and the other passengers were not allowed to deplane for the next 8 hours though, for reasons unknown to them. As a result of being stuck on the aircraft for such an extended period of time following this traumatic episode, Plaintiff and the other passengers on Flight 931 experienced or exacerbated bodily injuries, such as exhaustion, cramps, and other physical ailments.

22. Stuck with nothing else to do during those 8 hours, Plaintiff wandered up to the cockpit to express his appreciation to Flight 931's pilots on landing the plane in one piece. The pilot and co-pilot were extraordinarily helpful, and freely discussed what had precipitated the near-calamity.

23. Pointing to the shattered cockpit window, the pilots explained to Plaintiff how two of the three layers of that window had been completely compromised, and how the co-pilot's quick thinking (and extraordinary bravery) had saved everyone by keeping the third layer intact long enough for the plane to land in Goose Bay. The pilots grimly mentioned that everyone came close to dying many times over – from the pilots being sucked out of the window, to the fact that had the plane been further out on its journey, the pilots would have had no choice but to risk an almost certainly fatal water landing in the middle of the Atlantic Ocean.

24. Plaintiff asked if the cockpit window had been damaged because the plane had been hit by something. Both pilots chuckled in response to that question and said that was not possible because "there's nothing alive at 40,000 feet." The pilots said that this was likely the cause of a human mechanical error.

25. Specifically, the pilots explained that it was likely that a mechanic (necessarily a United mechanic, since only United mechanics can work on United airplanes) had over-torqued the bolts of the cockpit window. They believed this because they saw the windows begin to shatter around the frame of the window where the bolts were.

26. Even if a United mechanic was not responsible for over-torqueing the bolts of the cockpit window, some other United-related negligence was to blame for the cockpit window shattering. Nothing struck Flight 931 in the air. There was no bad weather. Under such ordinary flight conditions, cockpit windows for a Boeing 767-300 do not break of their own accord.

27. In any event, Plaintiff has suffered severe emotional distress as a result of United's accident. In particular, he has seen two different psychologists since Flight 931, and his mental injuries have not diminished. On five different occasions since then, he has had vivid nightmares involving people dying in horrific ways. He also now experiences panic attacks when he is in high locations, whereas he previously never had a fear of heights.

28. In fact, Plaintiff is an extremely experienced flyer, due in part to his role as the Chief Executive Officer for a customer service relations call center firm based in Maine. Around September of 2018, Plaintiff was recognized by United as having flown 1 million miles with that airline. But now, he has a fear of flying. On two recent short-hop flights, Plaintiff experienced nausea, anxiety, dizziness, and sleepiness. He is doing his best to treat his condition with therapy, but if it does not abate, his entire career might be in jeopardy.

29. Plaintiff's mental injuries have only been exacerbated by the discovery that United has been lying to everyone about what happened on Flight 931. He had to spend 6 or more hours talking to United's customer service because the events of Flight 931 caused him to miss a connecting flight on his way to his eventual destination of Zanzibar. United was not particularly helpful, and at United's direction, Plaintiff had to board a new flight to Zanzibar without yet having his return flight reinstated by United's Star Alliance partner (the cancellation of his original connecting flight also resulted in the cancellation of his associated return flight). Incidentally, because Plaintiff heeded United's direction to board his flight without a return ticket, when he arrived in Zanzibar, he was detained by the police there and interrogated for approximately one hour (with, bizarrely, the Zanzibar police officer opening Plaintiff's luggage and wearing his clothes stored inside).

30. But without a return ticket, Plaintiff had to continually call United's customer service for assistance. On October 31, 2018, while speaking to the United customer service

- 6 -

COMPLAINT
CASE NO. 3:19-CV-00396

1  agent, the agent who pulled his record commented that "her notes showed that a bird hit the
2  windshield" of Flight 931 and caused it to shatter. Plaintiff was infuriated when he heard this
3  explanation, as he knew it was an outright lie based on what Flight 931's pilots told him.

4        31.     In fact, anyone doing a Google search could quickly realize that no birds fly at
5  40,000 feet. For the small number of bird species that fly anywhere close to that height, such
6  birds are found in Asia (close to the Himalayas). Birds that live near the Eastern seaboard are of
7  a considerably less adventurous stock.

8        32.     Moreover, it would not surprise anyone to learn that large commercial jet airliners
9  are generally built to withstand a bird strike (given that birds are a constant hazard of airplanes).
10 While a single bird strike would obviously cause some damage given the laws of physics, the
11 kind of impact needed to cause Flight 931's cockpit window to shatter the way it did would mean
12 that multiple birds were (i) somehow flying at 40,000 feet over the Atlantic and (ii) managed to
13 crash into Flight 931 at the exact same spot. In short, United's explanation for what happened on
14 Flight 931 was not just implausible but was simply absurd.

15       33.     Due to his expertise in the customer service world, Plaintiff immediately realized
16 that some executive at United had instructed its employees to provide this cover story to the
17 public. Nobody else would have the authority to contradict the observations made by Flight
18 931's pilots. And, perhaps not coincidentally, the Montreal Convention does not impose liability
19 for air travel accidents caused by "bird strikes."

20       34.     Adding insult to injury, during that same call, United's customer service
21 representative told Plaintiff that the reason the passengers of Flight 931 were kept on board the
22 aircraft for 8 hours in Goose Bay was because "the Canadian customs didn't allow us to enter."
23 That explanation also seemed incredibly improbable. Goose Bay Airport is an international
24 airport, and thus is perfectly equipped to process any non-Canadian travelers. In fact, Delta
25 Airlines Flight 70 (Atlanta to Amsterdam) had made an emergency landing at Goose Bay on
26 October 27, 2017, and all the passengers on that flight were able to de-plane without incident.

27       35.     Several weeks later, Plaintiff received an auto-generated e-mail from United
28 offering him a voucher of $500 as a result of going through his experience on Flight 931, in

exchange for a release of all liability. Plaintiff did not accept this offer. But it does not matter, as Article 26 of the Montreal Convention invalidates any contractual attempt by an international airline to waive its liability under that treaty.

**FIRST CAUSE OF ACTION**
**(Montreal Convention – Strict Liability)**

36. Plaintiff hereby re-incorporates and re-alleges all the preceding paragraphs as if fully set forth herein.

37. As previously alleged in greater detail, Plaintiff was a passenger on United Airlines Flight 931.

38. Pursuant to treaty, the Montreal Convention is the exclusive remedy for claims brought by international air passengers arising out of an accident that took "on board the aircraft or in the course of any of the operations of embarking or disembarking."

39. As previously alleged in greater detail, Plaintiff experienced an "accident" within the meaning of the Montreal Convention.

40. As previously alleged in greater detail, Plaintiff experienced bodily injury, severe emotional distress, mental injury, and physical manifestations of injury caused by, or arising out of, the accident.

41. Pursuant to Article 21 of the Montreal Convention, United is strictly liable to Plaintiff in an amount up to approximately $75,000.

**SECOND CAUSE OF ACTION**
**(Montreal Convention - Negligence)**

42. Plaintiff hereby re-incorporates and re-alleges all the preceding paragraphs as if fully set forth herein.

43. As previously alleged in greater detail, Plaintiff was a passenger on United Airlines Flight 931.

44. Pursuant to treaty, the Montreal Convention is the exclusive remedy for claims brought by international air passengers arising out of an accident that took "on board the aircraft or in the course of any of the operations of embarking or disembarking."

45. As previously alleged in greater detail, Plaintiff experienced an "accident" within the meaning of the Montreal Convention.

46. As previously alleged in greater detail, Plaintiff experienced bodily injury, severe emotional distress, mental injury, and physical manifestations of injury caused by, or arising out of, the accident.

47. Pursuant to Article 21 of the Montreal Convention, United is liable for damages arising out of the accident that were caused by its own negligence.

48. As previously alleged in greater detail, United's negligence was the cause of the accident that took place on Flight 931. A United mechanic had over-torqued the bolts of the cockpit window, thereby causing it to shatter upon facing the air pressures encountered at Flight 931's cruising altitude of 40,000 feet. Or in the alternative, another act of United's negligence was the cause of the accident, because the aircraft's cockpit window does not shatter mid-flight unless it was negligently maintained.

## **PRAYER**

**WHEREFORE**, Plaintiff Theodore Liaw prays for judgment as follows:

1. For judgment against defendants United Airlines, Inc. and United Continental Holdings, Inc.;

2. For compensatory and special damages;

3. For attorney's fees, costs and expenses; and

4. For such other and further relief as the Court deems just and proper.

Dated: January 23, 2019         GAW | POE LLP

By: _____
Randolph Gaw
Attorneys for Plaintiff Theodore Liaw

## JURY DEMAND

Plaintiffs Theodore Liaw hereby demands a jury trial for his claims against defendants United Airlines, Inc. and United Continental Holdings, Inc.

Dated:  January 23, 2019                    GAW | POE LLP

By: _____
Randolph Gaw
Attorneys for Plaintiffs Theodore Liaw